## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF FLORIDA *ex rel.* OMNI HEALTHCARE, INC. <br><br>                 Plaintiffs, <br><br>    v. <br><br> STEWARD HEALTH CARE SYSTEM LLC; STEWARD HEALTH CARE HOLDINGS LLC; STEWARD HEALTH CARE INVESTORS, LLC; STEWARD PHYSICIAN CONTRACTING, INC; STEWARD MELBOURNE HOSPITAL, INC d/b/a MELBOURNE REGIONAL MEDICAL CENTER; STEWARD ROCKLEDGE HOSPITAL, INC. d/b/a ROCKLEDGE REGIONAL MEDICAL CENTER; RALPH DE LA TORRE; MICHAEL CALLUM; DANIEL KNELL; JOSH PUTTER; TIM CROWLEY AND JAMES RENNA, <br><br>                 Defendants. | Case No.: 3-21-cv-0870-S |

## MEMORANDUM OF LAW AND AUTHORITIES IN SUPPORT OF STEWARD DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# Contents

BACKGROUND ......................................................................................................... 3

LEGAL STANDARD ................................................................................................. 7

ARGUMENT .............................................................................................................. 8

A.      Relator fails to state a claim under Rule 12(b)(6). ...................................... 8

    1.      Relator fails to plead causation under the Anti-Kickback
    Statute. .......................................................................................................... 8

    2.      Relator fails to plead a Stark Law violation.............................................. 11

B.      Relator fails to plead FCA violations with particularity under Rule
9(b).      14

    1.      There are no particular allegations that claims were
    submitted to Medicare or TRICARE. ..................................................... 14

    2.      There are no substantive allegations against Steward Health
    Care Holdings, Steward Health Care Investors, Steward Physician
    Contracting, and Dr. Ralph de la Torre ................................................... 17

    3.      Relator fails to plead with particularity that the Steward
    Space Coast hospitals violated the False Claims Act. .......................... 18

    4.      Relator fails to plead with particularity that Steward Health
    Care System violated the False Claims Act........................................... 22

    5.      Relator fails to plead Florida state law False Claims Act
    claims. 23

    6.      Relator's Suntree Internal Medicine allegations should be
    dismissed................................................................................................... 24

C.      The qui tam provisions of the False Claims Act are
unconstitutional............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 6628 (2009) ...................................................................................................7

*Burrage v. United States*,
  571 U.S. 204 (2014) .....................................................................................................9

*In re Parkcentral Glob. Litig.*,
  884 F. Supp. 2d 464 (N.D. Tex. 2012) ....................................................................17

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) .....................................................................................7

*U.S. ex rel. Bartlett v. Ashcroft*,
  39 F. Supp. 3d 656 (W.D. Pa. 2014) ........................................................................13

*Unimobil 84, Inc. v. Spurney*,
  797 F.2d 214 (5th Cir. 1986) ....................................................................................17

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*,
  251 F. Supp. 2d 28 (D.D.C. 2003) ...........................................................................16

*United States ex rel. Benaissa v. Trinity Health*,
  963 F.3d 733 (8th Cir. 2020) .............................................................................14, 16

*United States ex rel. Bookwalter v. UPMC*,
  946 F.3d 162 (3d Cir. 2019) ...............................................................................12, 13

*United States ex rel. Cairns v. D.S. Med. LLC*,
  42 F.4th 828 (8th Cir. 2022) ......................................................................................9

*United States ex rel. Farmer v. City of Houston*,
  523 F.3d 333 (5th Cir. 2008) ....................................................................................17

*United States ex rel. Greenfield v. Medco Health Sols., Inc.*,
  880 F.3d 89 (3d Cir. 2018) ..........................................................................................9

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) .................................................................................8, 16

*United States ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*,
  626 F. App'x 528 (5th Cir. 2015) ...............................................................................7

*United States ex rel. Integra Med. Analytics, LLC v. Baylor Scott & White Health*,
   816 F. App'x 892 (5th Cir. 2020) ...........................................................................11

*United States ex rel. Martin v. Hathaway*,
   63 F.4th 1043 (6th Cir. 2023) ....................................................................9, 10, 11

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
   519 F. App'x 890 (5th Cir. 2013) ....................................................................19, 21

*United States ex rel. Park v. Legacy Heart Care, LLC*,
   No. 3:16-CV-803-S, 2018 WL 5313884 (N.D. Tex. Oct. 26, 2018) (Scholer,
   J.) .................................................................................................................. *passim*

*United States ex rel. Paul v. Biotronik, Inc.*,
   No. 8:18-CV-396-T-36JSS, 2021 WL 211474 (M.D. Fla. Jan. 21, 2021) ...........24

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
   125 F.3d 899 (5th Cir. 1997) ...................................................................................8

*United States v. Everglades Coll., Inc.*,
   No. 12-60185-CIV, 2013 WL 11976904 (S.D. Fla. May 10, 2013).....................24

*United States v. HPC Healthcare, Inc.*,
   723 F. App'x 783 (11th Cir. 2018) .......................................................................23

*United States v. Regeneron Pharms., Inc.*,
   No. CV 20-11217-FDS, 2023 WL 6296393 (D. Mass. Sept. 27, 2023)...............10

*United States v. Ricard*,
   922 F.3d 639 (5th Cir. 2019) ...................................................................................8

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*,
   599 U.S. 419 (2023) (Thomas, J., dissenting) .....................................................25

**Statutes**

42 U.S.C. § 1320a .....................................................................................................1, 8

42 U.S.C. § 1395nn...................................................................................1, 8, 12, 25

Controlled Substances Act, 21 U.S.C. § 811 ...............................................................9

False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ...................................................... *passim*

Fla. Stat. § 68.082 .....................................................................................................23

**Other Authorities**

42 C.F.R. § 411.351 ..............................................................................................8, 12

42 C.F.R. § 411.354(c) ................................................................................................12, 13

Federal Rules of Civil Procedure 8(a)(2) .........................................................................7

Federal Rules of Civil Procedure 9(b) ..................................................................... *passim*

Federal Rules of Civil Procedure 11(b)(3) ................................................................17, 18

Federal Rules of Civil Procedure 12(b)(6) .............................................................. *passim*

Defendants Steward Health Care System, LLC; Steward Health Care Holdings, LLC; Steward Health Care Investors, LLC; Steward Physician Contracting, Inc; Steward Melbourne Hospital, Inc d/b/a Melbourne Regional Medical Center; Steward Rockledge Hospital, Inc. d/b/a Rockledge Regional Medical Center; Steward Sebastain River Medical Center, Inc. d/b/a Sebastian River Medical Center; and Ralph de la Torre (collectively, the "Steward Defendants") submit this memorandum in support of their motion to dismiss the Amended Complaint.

Relator Omni Healthcare is a physician group in the Space Coast area of Florida that competes with Defendant Steward Health Care System (SHCS). It purports to bring suit under the False Claims Act and the Florida False Claims Act on behalf of the United States and the State of Florida. Relator's principal claim is that defendants violated the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b, in connection with SHCS's investment in First Choice Health Care Solutions (First Choice), a publicly traded company in the Florida Space Coast that included an orthopedic and spinal surgery practice, and that such AKS violations give rise to liability under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (FCA). Relator also alleges that the Steward Defendants violated the Stark Law, 42 U.S.C. § 1395nn, which prohibits self-referrals by physicians. Relator's Amended Complaint falls short of alleging FCA violations and the Amended Complaint should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Relator fails to plead violations of either the AKS or Stark Law under Rule 12(b)(6). First, for the AKS-based FCA claims, Relator fails to allege that Steward's investment in First Choice was the but-for cause of any referrals to any Steward hospital, as is required for FCA liability. Second, Relator attempts to plead a violation of the Stark Law, which prohibits a physician from referring designated health services (DHS) payable by the federal government to an entity with which the physician has a financial relationship. Relator fails to plead the First Choice surgeons

1

referred DHS to Steward hospitals; that there was a financial relationship between any Steward Defendant and the First Choice surgeons; and that any Steward Defendant acted with the requisite scienter to constitute an FCA claim based on a violation of the Stark Law.

Relator also fails to plead FCA violations with particularity as required by Rule 9(b). There is no allegation that any claim from a First Choice surgeon operating at a Steward hospital involved a government payor, which is required to plead that a false claim was presented to the government for payment, that a false statement material to a false claim was made, and that defendants conspired to present a false claim. 31 U.S.C. § 3729(a)(1)(A)-(C). That is reason alone to dismiss Count I. The FCA solely attaches liability where a fraud is perpetrated on the government, and here there could be nothing but speculation that a referral involved a government claim. This is a basic pleading failure but is unsurprising: Relator has no firsthand knowledge of the alleged fraud and instead solely relies on public information, hearsay, and a handful of excerpted documents.

Rather than pleading the specific grounds for liability against each of the 14 defendants, Relator resorts to impermissible group pleading. Other than identifying Steward Health Care Holdings, Steward Health Care Investors, Steward Physician Contracting, and Dr. de la Torre as defendants, there are virtually no allegations about them, warranting dismissal of claims against them. Allegations against the three hospital defendants are few and far between and do not come close to alleging a fraudulent scheme with particularity. The Amended Complaint not only fails to allege that SHCS submitted a false claim, but the allegations show that SHCS was not even in a role where it *could* submit claims to the government.

Relator's claims in Counts Five and Six that SHCS's investment violated the Florida FCA must be dismissed because Relator does not allege that a Steward Defendant submitted a claim to Medicaid or that First Choice even had a single Medicaid patient, as required by the Florida FCA.

In one paragraph, Relator tacks on an entirely separate fraud allegation. Relator alleges a physician with Suntree Internal Medicine entered into a contract with Steward Healthcare Network (SHCN), a non-defendant, to refer patients within SHCN in exchange for $250,000. But the Amended Complaint not only fails to allege that the Steward Defendants or the physician submitted any federal healthcare claims related to services performed by Suntree, it also fails to allege how this arrangement violated the FCA, AKS, or the Stark Law.

Finally, the FCA's qui tam provisions are unconstitutional. Count I should be dismissed.

## BACKGROUND

Relator Omni Healthcare is a physician group in Brevard County, Florida and a competitor to SHCS in the Florida Space Coast market. Am. Compl. ¶ 7. There are no allegations that Relator had a relationship with any Steward entity or First Choice. There are no allegations that Relator's principal was employed by any Steward entity or First Choice. There are no allegations that Relator's principal ever spoke with any of the Steward Defendants regarding the allegations.

SHCS was founded in Massachusetts. *Id.* ¶ 90. In 2017, SHCS acquired Melbourne Regional Medical Center (Melbourne), Rockledge Regional Medical Center (Rockledge), and Sebastian River Regional Medical Center (Sebastian River) in Florida's Space Coast. *Id.* ¶ 91.

First Choice was a medical group in the Florida Space Coast focused on orthopedics and was not physician owned but instead employed its physicians. *Id.* ¶ 92. Stock in First Choice was publicly traded. Chris Romandetti was the non-physician CEO of First Choice. *Id.* Relator generally alleges that prior to Steward's acquisition of the three Space Coast hospitals and at least through most of 2018, some First Choice surgeons used some of the operating rooms at some of the three Space Coast hospitals for some surgeries, though Relator fails to identify which surgeons operated at which hospitals. *E.g.,* Compl. (ECF No. 2) ¶ 63. First Choice surgeons operated at the Space Coast hospitals before there was any purported partnership between Steward and First

3

Choice or even before SHCS acquired the hospitals. *Id.* First Choice surgeons continued operating at an unnamed surgery center and at Health First hospitals, a local SHCS competitor, throughout the period of SHCS and First Choice's alleged partnership. Am. Compl. ¶ 135.

The earliest alleged contact between First Choice and SHCS was in the spring of 2017. In April 2017, SHCS CEO Dr. Ralph de la Torre purportedly met with Romandetti to discuss a "partnership[]." *Id*. ¶ 93. The partnership proposed by First Choice at some unspecified later time included First Choice hiring a neurosurgeon that would perform surgeries "at Steward,"[1] First Choice surgeons performing orthopedic surgeries at Steward hospitals, "Steward" building additional surgery capacity at the three Space Coast hospitals, and First Choice eventually expanding its orthopedic surgery practices to serve other Steward hospitals across the nation. *Id.* ¶¶ 3, 94–95. Relator does not allege that the plans in the proposal were ever implemented or even that SHCS agreed to the proposal. First Choice also wanted "Steward" to address "operating room issues that negatively impact[ed]" First Choice physicians, clinical concerns at the three Space Coast hospitals, "structural changes," and add new physicians to the network. *Id.* ¶ 96.

Relator alleges "Steward" identified open blocks of time in its operating rooms and "Steward" purchased new operating room equipment. *Id.* ¶ 137. Relator theorizes that such actions "*could be viewed* as allowing Steward to manage or direct First Choice or . . . show an exclusive arrangement between the two companies." *Id.* ¶ 106 (emphasis added). Relator does not identify which of the hospitals purchased new equipment or identified block times. Relator does not allege that First Choice surgeons exclusively or even primarily used Steward hospitals' operating rooms.

In October 2017, "a spreadsheet was circulated" with an estimate of surgeries at the three

---

[1] Despite defining "Steward" as SHCS, Relator often seems to refer to Steward hospitals or other Steward entities when it says "Steward" rather than SHCS. Such vague group pleading leaves the Steward Defendants in the dark about whom is the subject of an allegation.

Space Coast hospitals for 2018. *Id.* ¶ 101. At some unspecified point, Dr. Crowley provided an internal presentation at SHCS about expanding in the Indian River County area of Florida. *Id.* ¶ 107. The presentation included a wish list of physicians that SHCS hoped First Choice would recruit "to target the unmet needs at Steward's three hospitals." *Id.*

In February 2018, "Steward" and First Choice publicly announced a "strategic partnership," and "Steward" purchased 15.5% of First Choice stock for $7.5 million. *Id*. ¶ 111. SHCS paid $1.50 per share. *Id.* ¶ 112. First Choice was a "low-volume stock," its "bid and ask prices . . . fluctuate[d]," and in fact the price fluctuated from 97 cents to $1.73 per share in 2017. *Id.* ¶¶ 112–13. Relator alleges First Choice and SHCS had meetings in the first quarter of 2018 where they discussed tracking surgeries First Choice physicians performed. *Id*. ¶ 119.

At some unspecified point after April 2018, Romandetti determined that 93 surgeries where Health First (a private healthcare system in the area) was the payor could potentially be performed at some Steward facility. *Id*. ¶ 135. There are other similar allegations about one side or the other generally tracking where surgeries were performed and trying to project where surgeries could be performed in the future. *E.g.*, *id.* ¶¶ 4, 122. Relator does not allege that the Health First surgeries would be reimbursed by either federal or state payors, as required for FCA liability.

Relator alleges emails "detailed every change" to its hospitals' surgery schedules, such as an email noting a "patient had second thoughts and postponed," an email stating a patient could not have surgery because he had not timely stopped taking his blood thinner, and more generally that "[s]taff plugged holes in surgery schedules." *Id*. ¶ 143. There is no allegation that such emails concerned First Choice surgeons or Medicare patients.

Relator alleges that at an unspecified time a neurosurgeon left somewhere (presumably a Steward entity or First Choice, but there are no allegations about where the neurosurgeon was

employed), and Dr. Crowley then asked the Sebastian River president "how many of that doctor's surgeries would be covered by a First Choice doctor" after the neurosurgeon's departure. *Id.* ¶ 133.

Relator frequently resorts to guessing about what was said in a conversation, since Relator has no firsthand knowledge of any relevant. For example, Relator alleges that "following discussions with lawyers, executives from First Choice and Steward 'understood' certain elements of the deal could not be put in writing." *Id.* ¶ 106. Relator does not plead who supposedly violated the attorney-client privilege and disclosed the contents of conversations to Relator, what the specific contents of those conversations were, and when the conversations occurred.

Relator does not identify any specific claims submitted to a payor, let alone a government payor. There is just one sentence in the Amended Complaint about payors. Relator alleges that at an unspecified time (seemingly in 2017, before SHCS's investment in First Choice) that 37.2% of First Choice orthopedic patients had Medicare and 7.35% had Tricare, while 42.04% of First Choice spine patients had Medicare and 5.26% had Tricare. *Id.* ¶ 102. There is no allegation any patient had Medicaid, as necessary to state claims under the Florida FCA. There is no allegation about payors for claims in 2018. Not one claim by a specific physician on a specific date for a specific amount at a specific location is ever alleged. Relator purportedly identifies five Medicare claims but fails to plead the date of the claims and where the services were provided, making it unclear how, if at all, the claims are related to the alleged scheme. *Id.* ¶ 166.

Relator alleges that SHCS violated the Stark Law by "guaranteeing First Choice's physician salaries while it receive[d] exclusive referrals from them." *Id.* ¶ 155. Relator does not allege how SHCS guaranteed First Choice physician salaries or which physicians' salaries were guaranteed. Relator does not allege that any Steward Defendant paid any remuneration to any First Choice physician or that First Choice physicians referred any DHS to Steward hospitals.

In November 2018, Romandetti was federally indicted for a pump-and-dump scheme designed to defraud investors and control the price and volume of First Choice's stock. *Id.* ¶ 144. After Romandetti's indictment, SMG hired surgeons from First Choice and other unidentified practices (*id.* ¶¶ 145–46). Though inconsistent with the core allegation of an illicit relationship between SHCS and First Choice, Relator alleges that SHCS began recruiting First Choice surgeons to join SMG as employed physicians. *Id.*

The Government declined to intervene in this case on June 15, 2023.  ECF No. 31.

## LEGAL STANDARD

"[A] pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 626 F. App'x 528, 530 (5th Cir. 2015). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). The complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[N]aked assertions devoid of further factual enhancement" need not be credited and are insufficient to state a claim. *Id.*

In the context of allegations that a defendant violated the FCA, Rule 9(b) requires that a relator plead the alleged fraud with particularity. Thus, a "complaint can survive a motion to dismiss by alleging 'the details of an actually submitted false claim' or by 'alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted.'" *United States ex rel. Park v. Legacy Heart Care, LLC*,

7

No. 3:16-CV-803-S, 2018 WL 5313884, at *4 (N.D. Tex. Oct. 26, 2018) (Scholer, J.) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). "Put simply, 9(b) requires the who, what, when, where, and how of the fraud," (*id.*), alleging "the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby" (*Grubbs*, 565 F.3d at 188).

A relator must sufficiently plead the four elements of an FCA violation to state a claim: "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due." *Park*, 2018 WL 5313884 at *4. Here, Relator alleges predicate violations of the AKS and the Stark Law. To state a claim under the AKS, Relator must plead that the defendant "(1) solicited or received renumeration, (2) in return for referring an individual for a service, (3) that may be paid under a federal health care program, and (4) that the defendant acted knowingly and willfully." *United States v. Ricard*, 922 F.3d 639, 647 (5th Cir. 2019). The Stark Law "prohibits physicians from referring Medicare patients to an entity for certain 'designated health services,' including inpatient and outpatient hospital services, if the referring physician has a nonexempt 'financial relationship' with such entity." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997). Professional services that are personally performed by physicians, such as surgeries, are not designated health services under the Stark Law. 42 U.S.C. § 1395nn(h)(6); 42 C.F.R. § 411.351.

## ARGUMENT

### A. Relator fails to state a claim under Rule 12(b)(6).

#### 1. Relator fails to plead causation under the Anti-Kickback Statute.

To survive a motion to dismiss, Relator must plead that Defendants submitted claims to the government for services "resulting from" the AKS violation. 42 U.S.C. § 1320a-7b(g). Relator

8

fails to plead this required causation, and its claims must be dismissed under Rule 12(b)(6).

To plead causation, a relator must allege that but for the AKS violation, the defendant would not have submitted claims to the government for reimbursement. *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1052 (6th Cir. 2023). "When it comes to violations of the Anti-Kickback Statute, only submitted claims 'resulting from' the violation are covered by the False Claims Act." *Id.* (quoting 42 U.S.C. § 1320a-7b(g)). The ordinary meaning of "resulting from" is but-for causation. *Id; see also Burrage v. United States*, 571 U.S. 204, 210–11 (2014) (interpreting "results from" language in the Controlled Substances Act to require but-for causation); *United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 836 (8th Cir. 2022) (holding AKS requires but-for causation and that "'resulting from' . . . is unambiguously causal"); *but see United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 100 (3d Cir. 2018) (relying on the statute's purpose to require just a "link between the alleged kickbacks and the medical care received" by a patient). Here, Relator fails to allege both ends of the causal chain. On the front end, as discussed below (*see* § B.1.), Relator fails to allege with particularity that any Steward Defendant submitted even a single claim to the government for reimbursement, so there are no alleged claims that "result[ed] from" an alleged AKS violation. On the back end, even if one assumes claims to a government payor were submitted, Relator still fails to allege causation.

Relator alleges that First Choice surgeons operated at the three Space Coast hospitals before SHCS acquired them, and surgeries at one of the hospitals declined shortly after the investment, while saying nothing about surgeries at the other two hospitals after the investment. Am. Compl. ¶ 134;. *See Martin*, 63 F.4th at 1053 ("The problem for [Relator] is that the alleged scheme did not change anything."). Thus, at most Relator alleges that First Choice surgeons operated at the hospitals before the investment and operated at the hospitals after the investment.

9

"There's not one claim for reimbursement identified with particularity in this case that would not have occurred anyway, no matter whether the underlying [investment] occurred or not." *Id.*

If SHCS's investment in First Choice was actually a bribe for referrals, a change in behavior should be obvious, or at least noticeable. But Relator pleads the opposite. For example, Relator alleges in spring 2017 (nearly a year before the investment) that First Choice proposed hiring a neurosurgeon to operate at "Steward hospitals" (Am. Compl. ¶ 94), and then in spring 2018 Relator alleges First Choice made an employment offer to a surgeon to operate at Rockledge (*id.* ¶ 130). First Choice and SHCS acted the same the year before the investment as afterwards. How can one possibly say that but for the investment, the offer to the surgeon in spring 2018 would not have occurred? "[T]he alleged scheme did not change anything," so Relator has failed to adequately plead causation. *Martin*, 63 F.4th at 1053.

Relator also fails to allege that any First Choice surgeon was even aware of SHCS's investment and made her referral decisions based on the investment. *See United States v. Regeneron Pharms., Inc.*, No. CV 20-11217-FDS, 2023 WL 6296393, at *11 (D. Mass. Sept. 27, 2023) (questioning how "an AKS violation could lead to liability even if all of the prescribing physicians were unaware of the violation"). If the First Choice surgeons were not aware of SHCS's investment, any referrals from those surgeons post-investment could not have *resulted from* the investment. In fact, Relator alleges that the surgeons decided where to refer cases and perform surgeries, *not* Romandetti, Keller, or First Choice itself. *See, e.g.*, Am. Compl. ¶ 4 ("Steward and First Choice executives . . . tracked the number of procedures performed and *directed by First Choice doctors to Steward hospitals*").

The only allegations that suggest why First Choice surgeons may have operated more at the three Space Coast hospitals in 2018 are that the physicians had quality concerns about the

10

Space Coast hospitals, and Steward addressed them. For example, Relator alleges that in 2017 First Choice surgeons raised "operating room issues that negatively impact[ed] [them] and patient flow, clinical concerns at the hospitals, [and] needed structural changes [at the hospitals]." Am. Compl. ¶ 96. In June 2018, "Steward" purchased new surgery equipment, identified open blocks of time in surgery suites, and built additional operating rooms. *Id.* ¶ 137. First Choice surgeons' referrals (if any are alleged) resulted from improvements to the hospitals rather than the First Choice investment, undermining Relator's AKS allegations. *See Martin*, 63 F.4th at 1054 (noting an allegation that a "doctor concerned with outdated surgical equipment who tells a hospital that she will send referrals only if the hospital upgrades its facilities" does not plead an AKS violation); *United States ex rel. Integra Med. Analytics, LLC v. Baylor Scott & White Health*, 816 F. App'x 892, 898 (5th Cir. 2020) (affirming dismissal under Rule 12(b)(6) where a "legal and obvious alternative explanation" existed on the face of the pleadings). Relator fails to allege any claims resulted from the investment; all AKS-based FCA claims must be dismissed under Rule 12(b)(6).

### 2.    Relator fails to plead a Stark Law violation.

Relator's Stark Law claims (Counts Two, Four, and Seven) fail on three grounds and should be dismissed. Relator fails to allege: (1) First Choice surgeons referred DHS to Steward hospitals; (2) any relevant financial relationship between First Choice surgeons and the Steward hospitals; and (3) any Steward defendant knowingly violated the Stark Law, as is required for an FCA violation.

Relator seemingly alleges that Steward violated the Stark Law because "Steward guarantee[d] First Choice's physician salaries while it received exclusive referrals from them." Am. Compl. ¶ 155. According to Relator, this practice amounted to Steward "paying the physician to certify the need for DHS – which constitutes a prohibited referral." *Id.* Relator's conclusory allegations do not come close to alleging a Stark violation and Rule 12(b)(6) requires dismissal.

11

To state a Stark Law claim, a relator must allege that: (1) a physician referred certain designated health services (DHS) payable by Medicare; (2) to an entity with which the physician or an immediate family member of such physician has a financial relationship. 42 U.S.C. § 1395nn; *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019). DHS are enumerated in statute and include only: "(A) Clinical laboratory services; (B) Physical therapy services; (C) Occupational therapy services; (D) Radiology services . . .; (E) Radiation therapy services and supplies; (F) Durable medical equipment and supplies; (G) Parenteral and enteral nutrients, equipment, and supplies; (H) Prosthetics, orthotics, and prosthetic devices and supplies; (I) Home health services; (J) Outpatient prescription drugs; (K) Inpatient and outpatient hospital services; [and] (L) Outpatient speech-language pathology services." 42 U.S.C. § 1395nn(h)(6). Surgeries and other professional services that are personally performed by physicians are not DHS. 42 C.F.R. § 411.351 (the DHS of "inpatient hospital services do not include professional services performed by physicians"). A "financial relationship" includes any "compensation arrangement" involving remuneration, direct or indirect, between a physician or the physician's immediate family member and an entity furnishing DHS. 42 C.F.R. § 411.354(c); *Bookwalter*, 946 F.3d at 169.

Relator fails to sufficiently allege either of the two elements of a Stark Law. First, Relator does not sufficiently allege that First Choice surgeons referred DHS to Steward hospitals. Relator facially alleges that "[t]he physician services, or 'professional fee' services that Steward[2] bills on behalf of its patients, are DHS." (Am. Compl. ¶ 154), but this is wrong as a matter for law. DHS specifically do not include physician-performed services. *See, e.g.*, *Bookwalter*, 946 F.3d at 168 (the "definition [of DHS] is broad, but it has an important exception: services that a doctor performs personally do not count").

---

[2]As discussed, *infra*, Relator inaccurately identifies SHCS as billing for services performed by physicians. There are no allegations supporting this claim.

Second, Relator fails to allege any relevant financial relationship exists between the First Choice surgeons and any Steward Defendant. Relator purports to allege a "direct compensation relationship" between Steward and the referring First Choice surgeons based on Steward's "guarantee" of First Choice surgeons' salaries (Am. Compl. ¶ 156), but this pleading lacks any discernable specificity. The Amended Complaint is devoid of any detail regarding, for example, which Steward Defendant allegedly guaranteed First Choice surgeon's salaries; which surgeons' salaries were guaranteed; how anyone associated with Steward guaranteed salaries; or how such an arrangement was conveyed or memorialized. Further, even if Relator sufficiently pleaded a scheme whereby Steward guaranteed First Choice surgeons' salaries, such an arrangement would not create a direct compensation arrangement under the Stark Law. Relator does not allege that "remuneration passes between the referring physician . . . and the entity furnishing DHS [here, the Steward hospital] without any intervening persons or entities."  42 C.F.R. §411.354(c)(1)(i). A guarantee is not a payment, and Relator does not allege that any Steward Defendant directly paid any First Choice surgeon any remuneration. Therefore, no relevant financial arrangement is pled.

Finally, even if Relator sufficiently alleges a Stark Law violation, Relator fails to allege that such a violation amounts to an FCA cause of action, which Relator attempts to bring here. Although the Stark Law is a strict liability statute, to bring a Stark Law claim as an FCA-predicate, a relator must allege that a defendant meets the FCA's scienter requirements. *U.S. ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 674 (W.D. Pa. 2014) ("Because the self-referral prohibition in the Stark Act does not contain the same *scienter* requirement as that of the FCA, a violation of the Stark Act does not necessarily trigger liability under the FCA."). Specifically, a relator must allege that the defendant knowingly violated the Stark Law. *See* 31 U.S.C. §3793(a)(1)(A); *Bookwalter* 946 F.3d at 176 (holding relator must allege defendants "knew or

13

recklessly disregarded that the surgeons' pay varied with their referrals."). Here, Relator fails to allege that any Steward Defendant knowingly violated the Stark Law when it allegedly guaranteed the salaries of First Choice surgeons. Relator thus also fails to plead the "who, what, when, where, and how" of the fraud, as required by Rule 9(b). *Park*, 2018 WL 5313884, at *4.

**B.**     **Relator fails to plead FCA violations with particularity under Rule 9(b).**

**1.**     **There are no particular allegations that claims were submitted to Medicare or TRICARE.**

All claims against all Steward Defendants should be dismissed because there is nothing beyond speculation that federal government claims are involved. Relator must plead actual examples of false claims submitted to the federal government or particular details of a fraudulent scheme paired with reliable indicia that false claims were actually submitted to the federal government. *Park*, 2018 WL 5313884, at *6–8. Relator fails to meet its pleading burden.

Relator pleads a few general allegations about Medicare that do not come close to meeting its burden. Relator generally alleges, "37.2% of [First Choice's] orthopedics patients use Medicare with Tricare adding 7.35%. Government insurance paid for 42.04% of Medicare spine patients with Tricare adding another 5.26%." Am. Compl. ¶ 102. Relator does not plead any time period for these statistics, so it is impossible to know whether these figures pre-date or post-date the investment or even pre-date or post-date the alleged scheme. To the extent Relator is attempting to imply that because some 40-odd percent of First Choice's patient population were enrolled in Medicare or TRICARE, it is possible some First Choice patient with a federal government payor was operated on at a Steward Space Coast hospital, that "sort of general inference is not specific enough" to satisfy Rule 9(b). *United States ex rel. Benaissa v. Trinity Health*, 963 F.3d 733, 740 (8th Cir. 2020). Relator alleges "Rockledge increased its outpatient and inpatient Medicare payments from $31,699,109 to $34,142,899 between 2017 and 2018." Am. Compl. ¶ 165.

14

Rockledge is a 298-bed hospital (*id.* ¶ 13), and Relator never pleads that any of the Medicare payments Rockledge received were from First Choice referrals. A 7% year-over-year increase in Medicare payments for a large hospital that occurred at the same time Steward made significant upgrades is consistent with there being no referral scheme that suddenly spiked payments.

Relator attempts to plead specific examples of referrals but fails to do so. Relator has a table with five putative claims:

| Patient | Referred Entity or Physician | Total Charges | Government Healthcare Program | Total Amount Paid |
|---|---|---|---|---|
| Patient 1 | Dr. S | $11,437.36 | Medicare | $1,711.11 |
| Patient 2 | Dr. L | $11,430.80 | Florida Medicare | $1,603.89 |
| Patient 3 | Dr. L | $11,437.36 | Medicare | $1,599.04 |
| Patient 4 | Dr. H | $9,242.68 | Medicare | $1,432.58 |
| Patient 5 | Dr. A | $2,844.68 | Florida Medicare | $695.16 |

Am. Compl. ¶ 166. These are not adequately pleaded false claims. The most glaring deficiency is that Relator does not plead the date of the claim. Were these claims submitted in 1990, a month ago, or during the time period of the alleged scheme? Relator does not say. Also, what is the "Referred Entity or Physician"? That opaque term is nowhere defined. Neither are the pseudonyms Dr. S, Dr. L, etc. Are they First Choice physicians or Steward physicians? What were the procedures? Were the Medicare claims even related to the "highly profitable" types of surgeries that Relator alleges was the core of the scheme? And where were the services provided? At Melbourne? At Rockledge? At Sebastian River? All three? The Defendants and the Court are left guessing as to virtually all of the details of the so-called specific claims, showing they are not specific at all and do not move Relator's allegations from *possible* to *plausible*.

"[B]ecause the act of submitting a fraudulent claim to the government is the *sine qua non* of a False Claims Act violation, it was insufficient to describe in detail a private scheme to defraud and then speculate that claims must have been submitted, were likely submitted or should have

15

been submitted to the Government." *Benaissa*, 963 F.3d at 740. Relator fails to identify a single federal claim was submitted as a part of the fraud scheme.

Relator fails to even broadly describe any particular surgeries that resulted in false claims. Instead, there are allegations like a description of an undated email where "staff" (Steward or First Choice staff? Who knows?) tried to "convinc[e] patients to move up procedures" to fill vacancies in Steward hospital operating rooms. Am. Compl. ¶ 143; *see Grubbs*, 565 F.3d at 191 (holding where no specific claims pleaded, relator needed to plead "dates and descriptions of . . . services [that were basis for alleged false claims] and a description of the billing system that the records were likely entered into"). This allegation is too vague to adequately plead fraud under Rule 9(b), and it fails to even allege that the unnamed patients were Medicare or TRICARE patients. *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 35 (D.D.C. 2003) (dismissing FCA claims because "Relators do not allege that claims for payment were made to the federal government for patients"). No allegation gets any closer to particularly alleging a false claim was presented to the government. Relator fails to plead any particular details or reliable indicia of a fraudulent scheme, and all claims against all defendants must be dismissed. *See Park*, 2018 WL 5313884, at *6 (dismissing claims because "Relator fails to allege that any of the unnamed patients in these examples were actually Medicare patients").

Indeed, Relator alleges that First Choice apparently singled out surgeries where Health First (a private healthcare system in the area) was the payor, and alleged that these were the surgeries that could potentially be done at "Steward." Am. Compl. ¶ 135. Where the focus of the purported fraudulent scheme (which is vaguely pleaded anyway) only involves claims to a private payor, there is no FCA violation alleged. *Park*, 2018 WL 5313884, at *6; *see also Barrett*, 251 F. Supp. 2d at 35 (dismissing AKS-based FCA claims where "allegations are linked directly to cash

16

patients . . . and therefore do not seem to relate to Medicare at all").

This failure not only dooms Relator's presentment and false statement FCA claims but also its conspiracy claim. "To prove [an FCA] conspiracy, [a relator] ultimately must be able to show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the government] and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). Here, Relator was required to allege with particularity a conspiracy to submit a false claim *to a government payor*. It has not done so. There is no allegation any Steward Defendant tried to get any allegedly false claim paid by the government. Relator's conspiracy claims must be dismissed.

### 2. There are no substantive allegations against Steward Health Care Holdings, Steward Health Care Investors, Steward Physician Contracting, and Dr. Ralph de la Torre.

"It is impermissible to . . . lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another." *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 471 (N.D. Tex. 2012). "[G]eneral allegations, which do not state with particularity what representations each defendant made, do not meet [the Rule 9(b)] requirement." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986). Here, Relator fails to identify which of the 14 defendants allegedly committed what actions. Therefore, Relator's "group pleading does not provide Defendants with fair notice of Relator's claims." *Park*, 2018 WL 5313884, at *6.

After identifying Steward Health Care Holdings, LLC, Steward Health Care Investors, LLC, and Steward Physician Contracting, Inc. as defendants (Am. Compl. ¶¶ 9 – 11), there are no further allegations about these three entities. "Despite naming [these entities] as [] defendant[s] in this suit, Relator does not allege any specific fraudulent or illegal conduct attributable to [them]. Beyond the caption of the pleading, [they are] only mentioned in [the] Section []detailing the parties[.]" *Id.* at *5. These scant pleadings may "potentially [be] a violation of FRCP 11(b)(3) and

an unreasonable stretch of deduction. At a minimum, they are insufficiently pled." *Id.* Defendants identified these pleading deficiencies in Relator's original complaint, yet Relator did nothing to correct deficiencies or remove these three entities as defendants in their Amended Complaint.

After identifying Dr. Ralph de la Torre as CEO of SHCS (Am. Compl. ¶ 15), there are just three allegations about Dr. de la Torre and no allegation he acted unlawfully. In paragraph 93, Relator alleges that in April 2017 Dr. de la Torre had dinner with Romandetti and First Choice's CFO to "explore and discuss Steward and [First Choice] partnerships." The only allegations regarding the meeting involving Dr. de la Torre are that Dr. de la Torre was involved in discussions "to explore the potential benefits of the partnership." *Id.* ¶ 95. In paragraph 97, Relator alleges that on June 6, 2017 (a month after Dr. de la Torre's alleged meeting with Romandetti), Steward employees discussed how to present the First Choice opportunity to Dr. de la Torre. There is no allegation that this presentation was ever provided to Dr. de la Torre. Then, in paragraph 127, Relator alleges that Dr. de la Torre and other Steward executives tracked referrals from First Choice to Steward. In sum, Relator alleges that Dr. de la Torre (1) met with the head of First Choice; and (2) tracked referrals from First Choice to Steward hospitals. These allegations do not come close to meeting the elements of a False Claims Act violation.

The allegations against these three entities and Dr. de la Torre "do[] not establish 'more than a sheer possibility that [they] ha[ve] acted unlawfully,'" and claims against them must therefore be dismissed. *Park*, 2018 WL 5313884 at *5 (quoting *Iqbal*, 556 U.S. at 678).

> ### 3.   Relator fails to plead with particularity that the Steward Space Coast hospitals violated the False Claims Act.

The allegations concerning the three Steward Space Coast hospitals here are vague, general, incomplete and fall short of the particularity requirement in Rule 9(b).

*Rockledge Regional Medical Center.* The allegations about Rockledge are sporadic and

typically clumped together with allegations regarding all three of Steward's Space Coast Hospitals.

Relator alleges that an unknown individual circulated a spreadsheet detailing that "1,225 incremental surgeries would flow to Steward Rockledge, Steward Melbourne, and Steward Sebastian River" because individual surgeons would perform more procedures at the hospitals. Am. Compl. ¶ 101. Relator also alleges that after the First Choice investment was finalized, unspecified "senior officials of both companies discussed realigning surgeries and hiring staff to direct expensive and profitable procedures to" the Steward hospitals (*id.* ¶¶ 115–16); that an email from an unknown sender tasked Steward executive Daniel Knell with "meeting with the Steward Rockledge hospital president to discuss a plan to increase surgical cases for Steward" (*id.* ¶ 125); and that "Steward was to move its physical and occupational therapy and orthopedic business from its hospitals in three Florida Hospitals [sic] to First Choice" (*id.* ¶ 139). Further, Relator alleges that in spring 2018 "First Choice offered Dr. B a position to practice at Steward Rockledge," apparently with Steward guaranteeing the salary of Dr. B "by making the physician sit on the referring side as well as the treating side" and "invariably corrupt[ing] the physician's medical judgment and assist[ing] in achieving Steward's goal of receiving exclusive referrals and retaining top talent." *Id.* ¶ 130. And, finally, as proof of federal payments to Rockledge, Relator alleged that Rockledge "increased its outpatient and inpatient Medicare payments from $31,699,109 to $34,142,899 between 2017 and 2018." *Id.* ¶ 161–65.

Plainly, these sparse allegations do not allege with particularity that Rockledge submitted false claims to the government. Relator alleges the Rockledge hospital as a whole received Medicare payments in 2017 and 2018 but fails to tie any of these payments to referrals by First Choice, let alone any alleged fraudulent conduct. Further, there is no allegation that what is alleged in any of these claims actually came to fruition. *See U.S. ex rel. Nunnally v. W. Calcasieu Cameron*

19

*Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (dismissing AKS-based FCA claims where allegations were unclear whether discrepancy in lab charges were "real rather than hypothetical"). That is, Relator does not articulate whether Knell actually met with the president of Rockledge (Am. Compl. ¶ 125); that the number of surgeries at Rockledge increased following senior officials discussing "realigning surgeries" (*id.* ¶¶ 115–16); or that First Choice actually hired the mysterious (and never again mentioned) "Dr. B" or that Dr. B performed any procedures at Rockledge (*id.* ¶ 130). Even if there were allegations that these things actually occurred, it is unclear how they resulted in false claims being submitted. For example, it is left unexplained how First Choice could offer a physician a position to practice at a Steward hospital and how Steward guaranteed Dr. B's salary. FCA claims against Rockledge must be dismissed. *Park*, 2018 WL 5313884, at *6.

*Sebastian River Medical Center.* Similar to the Rockledge allegations, Sebastian River is identified as a defendant and then virtually nothing more is said about it that is not lumped together with the other two hospitals. Relator makes only two allegations specific to Sebastian River. First, Relator alleges that at some unspecified point, Kelly Enriquez, the president of Sebastian River, provided a report to Crowley showing where Sebastian River physicians referred patients. *Id.* ¶ 133. "Crowley instructed Enriquez to inform First Choice what types of cases were 'missing so FC could hire the right ortho.'" *Id.* At an unidentified time, SHCS executive Josh Putter "scheduled a meeting" with Enriquez "to discuss using three existing orthopedic doctors working in the Steward system." *Id.* Second, Relator alleges First Choice CFO Phil Keller prepared a "financial reconciliation" that "showed that Steward Melbourne and Steward Sebastain River's surgery count increased by 52 cases" between the date of the investment and September 2018. *Id.* ¶ 140.

The allegations against Sebastian River do not come close to meeting Rule 9(b)'s threshold. It is unclear how Enriquez providing an internal referral report to an SHCS executive, Crowley's

communication to Enriquez regarding "missing" cases, or Putter's scheduling a meeting with Enriquez (*id.* ¶ 133) are relevant at all to the alleged scheme. Relator also fails to allege that anything actually occurred related to Enriquez (who is not a defendant in this case). Instead, Relator only alleges that Enriquez was instructed to do something and that Putter scheduled a discussion with her. Similarly, the allegation that the surgery counts increased across the entire hospitals of Melbourne and Sebastian River is not even a particularized allegation that First Choice surgeons increased its referrals to those hospitals. It is only an allegation that all surgeries increased compared to some unknown previous date timeframe of surgeries.

These allegations do not raise a plausible inference that any false claims to government payors resulted, and relator has identified none. *Nunnally*, 519 F. App'x at 894. Identifying what services are lacking and could be provided by an outside practice does not plead an FCA violation, neither does discussing "the use of" physicians within a hospital system (Am. Compl. ¶ 95), particularly as the latter allegation does not even indicate that the three unidentified physicians were affiliated with First Choice. The scattershot allegations about Sebastian River fail to allege fraud and must be dismissed. *Park*, 2018 WL 5313884, at *6.

*Melbourne Regional Medical Center.* A number of allegations against Melbourne repeat insufficient allegations discussed above, while other allegations unique to Melbourne fail to plausibly allege FCA violations. Relator alleges that at an unspecified time First Choice directed "the most profitable" surgeries to Steward and that "Melbourne Regional experienced a $5.4 million increase in revenue." Am. Compl. ¶¶ 120–21. Relator also alleges that "[i]n March 2018, the President of Steward Melbourne promised to provide First Choice officials an updated tally of surgical runs performed at Steward Melbourne each week." *Id.* ¶ 134. According to Relator, First Choice referred 16 fewer surgeries to Melbourne between the date of the investment and March

21

2018, but that "charges [were] up due to the increase in more profitable spine surgeries." *Id.*

These allegations fail to describe with particularity any FCA violation. Relator fails to plead a causal connection between any AKS violations and the alleged increase in revenue at Melbourne. Further, Relator fails to allege that Melbourne submitted any claims from First Choice referrals to the government for payment. Relator pleads neither actually submitted claims nor a strong inference of submitted claims, requiring dismissal. *Park*, 2018 WL 5313884, at *4.

### 4. Relator fails to plead with particularity that Steward Health Care System violated the False Claims Act.

Throughout the Amended Complaint, Relator alleges that SHCS (referred to throughout the Amended Complaint as "Steward") committed various acts, including being the entity that made the investment in First Choice. Am. Compl. ¶¶ 2, 8. According to the Amended Complaint, SHCS acquired the three Space Coast hospitals in 2017. *Id.* ¶ 91.

Relator alleges no details of an actually submitted false claim by SHCS. To survive dismissal, Relator must allege "particular details of a scheme . . . paired with reliable indicia that lead to a strong inference that the claims were actually submitted." *Park*, 2018 WL 5313884, at *4. Relator does not allege that SHCS itself submitted any claims to the federal government. While Relator fails to allege that any defendant submitted any claims to the federal government (*see supra,* Sec. B.1), this failure is particularly glaring for the allegations against SHCS because Relator does not even allege that SHCS *could* submit claims to the federal government. Healthcare providers, such as physicians and hospitals, traditionally submit claims. There is no allegation that SHCS employed practicing physicians or operated medical facilities, and thus unsurprisingly there is no allegation that SHCS even had a billing department to process claims. There is no allegation SHCS actually submitted any claims to the government, and because SHCS was not even in a position to submit claims and "unwarranted deductions of fact are not accepted as true," there

cannot even be an inference that SHCS submitted claims to the federal government. *Id.* at *8.

Further, although Relator purports to define SHCS as "Steward" in the Amended Complaint (Am. Compl. ¶¶ 2, 8), it often includes other entities in its allegations about "Steward" and thus resorts to inappropriate group pleading that lacks particularity.

For example, Relator often uses the term "Steward" to refer to the recipient of certain referrals from First Choice, or the location where surgeries could be performed. *See, e.g.*, Am. Compl. ¶¶ 127 (alleging that "[t]he thrust of First Choice's pitch and value proposition . . . was in increase referrals from First Choice to Steward"), *id.* ¶ 128 ("First Choice . . . had a revolving door of patients ready at its disposal to refer to Steward."). There is no allegation SHCS operated any medical facility, so Relator is instead conflating SHCS and some unidentified hospitals (possibly the three Space Coast hospitals) or an unidentified surgery center. That conflates the "who" that Relator is required to plead with particularity, and "this group pleading does not provide Defendants with fair notice of Relator's claims." *Park*, 2018 WL 5313884, at *6.

### 5. Relator fails to plead Florida state law False Claims Act claims.

Allegations that Defendants violated the Florida FCA, Fla. Stat. § 68.081(2), are thrown in as Counts Five and Six. Am. Compl. ¶¶ 191–99. But these allegations fail.

The Florida FCA mirrors the federal FCA and requires proof of the same elements. *United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 787 (11th Cir. 2018); The Florida FCA requires a false claim to be submitted to the State of Florida. Fla. Stat. § 68.082(2)(a)-(c).

Relator's Florida FCA claims fail for the same reasons the federal FCA claims. They also fail because Relator does not allege that a false claim (or any claim) was submitted to Florida. Relator does not allege that any Steward Defendant or First Choice physician even accepted Medicaid. In an attempt to cure this deficiency, Relator adds one sentence to the Amended Complaint that summarily alleges that First Choice referred patients to Steward and Steward billed

23

unidentified services "through CMS Form 1500 and was paid for those services by the Medicare and Medicaid programs." Am. Compl. ¶ 157. But this allegation lacks the specificity to survive Rule 9(b), and Relator's Florida FCA claims should be dismissed. *See United States v. Everglades Coll., Inc.*, No. 12-60185-CIV, 2013 WL 11976904, at *4 (S.D. Fla. May 10, 2013); *United States ex rel. Paul v. Biotronik, Inc.*, No. 8:18-CV-396-T-36JSS, 2021 WL 211474, at *4–5 (M.D. Fla. Jan. 21, 2021) (dismissing Florida FCA claim on 9(b) grounds where Relator provided 85 examples of improper procedures, but only summarily alleged that the procedures "were ultimately paid for by Medicare, Medicaid, or another government funded healthcare provider."). "It is not sufficient for Relator to allege merely that claims must have been submitted, were likely submitted, or should have been submitted to a federally-funded healthcare provider. Without providing certain details such as dates that the false claims were submitted, amounts listed in those claims, or similar details, a complaint does not meet the standards of Fed. R. Civ. P. 9(b)." *Id.* at *5.

### 6.    Relator's Suntree Internal Medicine allegations should be dismissed.

In one paragraph, Relator summarily alleges a separate scheme, whereby "Steward offered a physician with Suntree Internal Medicine a lump sum of $250,000 to sign a contract with Steward that required the doctors to refer patients to the Steward Healthcare Network."  Am. Compl. ¶ 146.

Relator's allegations boil down to a claim that SHCS (though Relator just says "Steward") paid a Suntree physician to join SHCN. But Relator does not explain how this is an FCA violation. Relator does not allege how a physician signing a contract to join a physician network violates the FCA, nor does Relator allege that Steward Defendants or the physician submitted any federal or Florida state claims, let alone false ones. SHCN is not even one of the 14 defendants here.

Defendants are left to guess why Relator believes the payment was unlawful. To the extent Relator is alleging that the payment from SHCS to Suntree violated the AKS, that claim is insufficiently pleaded because Relator does not allege that any purpose of the payments from

SHCS to the physician was to induce referrals. Nor does Relator allege that SHCS would benefit from referrals to Steward hospitals, as they are separate entities.

If Relator is alleging that the arrangement violated the Stark law, 42 U.S.C. § 1395nn, the claim fails. Relator alleges that SHCS paid the physician for the physician to "refer patients to the Steward Healthcare Network." *Id.* ¶ 146. While Relator alleges a financial relationship between SHCS and the physician, Relator does not allege that the physician had any financial relationship with SHCN. Further, Relator does not allege that the physician referred any DHS to SHCN, nor could it since SHCN is a physician network, not a healthcare provider. These failures are fatal.

### C.     The qui tam provisions of the False Claims Act are unconstitutional.

Relator brings this suit under the qui tam provisions of the FCA after the government declined to intervene. Justice Thomas recently stated that "[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *id.* at 442 (Kavanaugh, J., concurring).

"Because the entire executive Power belongs to the President alone, it can only be exercised by the President and those acting under him." *Id.* at 449 (Thomas, J., dissenting). Conducting civil litigation to vindicate public rights is an executive function that can only be exercised by officers of the United States duly appointed under the Appointments Clause. *Id.* "A private relator under the FCA, however, is not appointed as an officer of the United States under Article II," so "Congress cannot authorize a private relator to wield executive authority to represent the United States' interests in civil litigation." *Id.* at 449–50. Because the *qui tam* provisions of the FCA are unconstitutional, Relator Count One of the Amended Complaint must be dismissed.

### CONCLUSION

The Amended Complaint should be dismissed for the reasons noted above.

Dated:  February 2, 2024          Respectfully submitted,

**McDermott Will & Emery LLP**

By:    */s/ Kaylynn Webb*
        David Genender (Bar No. 00790757)
        Kaylynn Webb (Bar No. 24118583)
        2501 North Harwood Street, Suite 1900
        Dallas, Texas 75201
        (214) 295-8000
        dgenender@mwe.com
        kwebb@mwe.com

Mark W. Pearlstein (admitted *pro hac vice*)
200 Clarendon Street, Floor 58
Boston, Massachusetts 02116
(617) 535-4000
mpearlstein@mwe.com

Alexander Kritikos (admitted *pro hac vice*)
845 Texas Avenue, Suite 4000
Houston, TX 77002
(713) 653-1700
akritikos@mwe.com

Theodore E. Alexander (admitted *pro hac vice*)
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000
talexander@mwe.com

*Attorneys for Steward Health Care System LLC; Steward Health Care Holdings LLC; Steward Health Care Investors, LLC; Steward Physician Contracting, Inc.; Steward Melbourne Hospital, Inc. d/b/a Melbourne Regional Medical Center; Steward Rockledge Hospital, Inc. d/b/a Rockledge Regional Medical Center; Sebastian River Hospital, Inc. d/b/a Sebastian River Medical Center; and Ralph de la Torre*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, I electronically filed the foregoing document using the Court's ECF system, which will send notice of the filing to all counsel of record via e-mail.


/s/ *Kaylynn Webb*
Kaylynn Webb