UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF FLORIDA *ex rel.* OMNI HEALTHCARE, INC.,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>STEWARD HEALTH CARE SYSTEM LLC; STEWARD HEALTH CARE HOLDINGS LLC; STEWARD HEALTH CARE INVESTORS, LLC; STEWARD PHYSICIAN CONTRACTING, INC; STEWARD MELBOURNE, INC. d/b/a MELBOURNE REGIONAL MEDICAL CENTER; STEWARD ROCKLEDGE HOSPITAL, INC. d/b/a ROCKLEDGE REGIONAL MEDICAL CENTER; STEWARD SEBASTIAN RIVER MEDICAL CENTER, INC. d/b/a SEBASTIAN RIVER MEDICAL CENTER; RALPH DE LA TORRE; MICHAEL CALLUM; DANIEL KNELL; JOSH PUTTER; TIM CROWLEY; and JAMES RENNA,<br><br>    *Defendants*. | Case No.: 3-21-cv-00870-S |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT MICHAEL CALLUM'S MOTION TO DISMISS THE AMENDED COMPLAINT**

As Dr. Callum demonstrated in his opening brief, the Amended Complaint does not allege that he did anything unlawful, let alone specify the who, what, when, where, and how of the purported False Claims Act ("FCA") violations. Relator's opposition does nothing to remedy these pleading deficiencies; it simply mischaracterizes the Amended Complaint's allegations in a failed effort to make them seem sufficiently particularized. The Amended Complaint should be dismissed with prejudice as it relates to Dr. Callum for failure to satisfy the pleading requirements of Rules 12(b)(6) and 9(b).[1]

## ARGUMENT

A. **Relator blatantly misrepresents the allegations in the Amended Complaint and fails to plead with particularity that Dr. Callum is personally responsible for any FCA violations.**

Dr. Callum's opening brief demonstrated that the Amended Complaint (1) engages in impermissible group pleading by grouping Dr. Callum together with various other "executives"; (2) merely speculates as to what Dr. Callum personally saw, heard, or did; and (3) conveniently omits factual allegations from the original Complaint that tend to show that Dr. Callum did not participate in the purported scheme to violate the FCA. *See* Dr. Callum MTD (Dkt. No. 81) at 5–11.[2]

Relator's Opposition does nothing to remedy these pleading deficiencies. Instead, Relator mischaracterizes allegations in the Amended Complaint in a failed effort to make them seem sufficiently particularized. For example, Relator asserts in its opposition that "on June 6, 2017, [Dr.] Callum received an email from [Tim] Crowley that discussed how the exclusive referral

---

[1] Dr. Callum joins in full the Steward Defendants' reply in further support of their motion to dismiss and focuses in this reply on the allegations specific to him.

[2] Citations to page numbers of docketed material correspond to the pagination generated by this District's Electronic Case Files ("ECF") system.

scheme would 'generate hospital revenue' and 'grow[] the network and covered lives.'" Opp. Br. (Dkt. No. 96) at 9 (quoting Am. Compl. (Dkt. No. 72) ¶ 97). But the June 6, 2017 email in question, as described in the Amended Complaint, makes no mention of an "exclusive referral scheme." According to the Amended Complaint, "[t]he email chain [in question] discusse[d] the potential partnership with First Choice, with [Josh] Putter indicating a desire to generate hospital revenue, [Mark] Girard indicating his focus on growing the network and covered lives, and a discussion as to how the opportunity might be presented to [Ralph] de la Torre." Am. Compl. ¶ 97. The Amended Complaint does not allege that Dr. Callum was part of any such discussion, received the email chain, or knew anything about it. It alleges only that the email "reference[d] an upcoming meeting with [Dr.] Callum," *id.*, but does not allege that the meeting actually took place, let alone what Dr. Callum might have said or heard at any such meeting. *See* Dr. Callum MTD at 6.

Relator similarly misrepresents the nature of materials that were allegedly provided to various Steward executives. Relator's Opposition asserts that "First Choice created presentations and financial analyses that outlined how Steward would benefit from [the] exclusive referral scheme." Opp. Br. at 9–10 (citing Am. Compl. ¶¶ 95–97). Once again, however, the presentations and analyses cited in the Amended Complaint make no reference to an "exclusive referral scheme." They merely discuss ways for First Choice and Steward's proposed partnership to address "operating issues that negatively impact their doctors and patient flow, clinical concerns at the hospitals, needed structural changes, [and] adding new physicians to the network," all of which would "increase revenue by the 'realignment' of surgery between the hospitals and ambulatory surgery center while both companies worked on bundled pay initiatives." Am. Compl. ¶ 96. These allegations do not describe any wrongdoing, let alone wrongdoing by Dr. Callum.

Relator's Opposition, citing the Amended Complaint, also misleadingly states: "A presentation titled, 'Steward Health Care System & First Choice Healthcare Solutions, A

3

Partnership to Drive Growth in Brevard County,' was given to [Dr.] Callum so he could review First Choice's plan to recruit neurosurgeons which would then increase orthopedic call coverage at Steward facilities and increase surgeries at Steward facilities." Opp. Br. at 10 (quoting Am. Compl. ¶ 99). The statement is misleading because the Amended Complaint does not actually allege that the presentation "was given" to Dr. Callum, as Relator asserts; it alleges that certain attachments to an outline were "put together in a presentation which would then be given to [Dr.] Callum." Am. Compl. ¶ 99. There is no allegation that Dr. Callum actually received the presentation, let alone allegations concerning when it was purportedly given to him or what exactly purportedly was said to him. *See* Dr. Callum MTD at 6–7. Those are the kinds of details required by Rule 9(b). Moreover, there is no indication that these materials regarding orthopedic call coverage were part of an "exclusive referral scheme," and thus that the presentation is evidence of wrongdoing.

Relator further mischaracterizes the nature of certain discussions involving Dr. Callum. Citing the Amended Complaint, the Opposition states that "[Dr.] Callum discussed 'incremental benefits' that First Choice and Steward would receive through the ill-gotten gains of the exclusive referral scheme." Opp. Br. at 10 (quoting Am. Compl. ¶ 105). But the cited portion of the Amended Complaint simply states that Dr. Callum (and others) "discussed the 'incremental' benefits of the proposed partnership." Am. Compl. ¶ 105. It provides no detail about what was discussed or how, if at all, such discussions advanced the purported illegal scheme. *See* Dr. Callum MTD at 7–8.

The Opposition states in conclusory fashion that, "[a]t all times, [Dr.] Callum knew that First Choice would refer patients to Steward so both parties would receive financial gain." Opp. Br. at 22 (citing Am. Compl. ¶ 94). But the portion of the Amended Complaint the Opposition

cites—Paragraph 94—makes no mention of an illegal referral arrangement. And Dr. Callum is not even referenced in that paragraph. *See* Am. Compl. ¶ 94 (discussing agenda circulated prior to Ralph de la Torre's meeting with Chris Romandetti).

By resorting to these mischaracterizations of the Amended Complaint, Relator effectively acknowledges what is obvious from the face of the Amended Complaint—the pleadings are not sufficient to show that an "exclusive referral scheme" existed between First Choice and Steward, or that Dr. Callum (or anyone else) knew about or participated in such a scheme. Aside from a smattering of conclusory allegations regarding referrals (*e.g.*, Am. Compl. ¶ 127), there are no particularized allegations *whatsoever* regarding such an exclusive referral arrangement. *See* Dr. Callum MTD at 8–9. The Amended Complaint still does not allege with particularity the names of the doctors who were involved in this alleged exclusive referral scheme, the hospitals the doctors were affiliated with, or the mechanics of the alleged unlawful arrangement. *See* Steward MTD (Dkt. No. 80) at 15 ("Relator . . . fails to allege that any First Choice surgeon was even aware of SHCS's investment and made her referral decisions based on the investment."); *id.* at 18 ("The Amended Complaint is devoid of any detail regarding, for example, . . . which surgeons' salaries were guaranteed; how anyone associated with Steward guaranteed salaries; or how such an arrangement was conveyed or memorialized."). The most Relator can do is point to an unnamed physician from an unrelated practice (Suntree Internal Medicine) and claim that this unrelated physician's sign-on bonus in September 2020 (*i.e.*, long after Steward's partnership with First Choice ended) "evinces the larger Exclusive Referral Scheme concocted by Defendants." Opp. Br. at 27; *see also* Am. Compl. ¶ 146. These allegations are plainly insufficient.

Relator argues that the Amended Complaint does not require the Court to "make leaps" regarding the "topic" discussed during the alleged meetings and discussions involving Dr. Callum

5

and other individual defendants regarding the purported referral scheme, *see* Opp. Br. at 25, but given the deficiencies outlined above and in Dr. Callum's opening brief, that is exactly what Relator asks of the Court—in contravention of Rule 9(b).  *See Blacks in Tech. Int'l v. Blacks in Tech. LLC*, No. 3:20-CV-03008-X, 2022 WL 1689310, at *3 (N.D. Tex. May 26, 2022) ("[T]he Fifth Circuit's precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.") (internal quotation marks omitted).

Relator also argues, incorrectly, that because "the Stark law is a strict liability offense," there is no scienter requirement in this case. Opp. Br. at 25.  That misstates the law.  Because there is no cause of action in federal court for bringing Stark claims, they must be brought through the vehicle of the False Claims Act, which has a scienter requirement.  *See* 31 U.S.C. § 3729(a); 42 U.S.C. §1395nn.  Here, Relator has not adequately pleaded that Dr. Callum knowingly violated any laws—Stark or the Anti-Kickback Statute—that can serve as the basis for Relator's FCA claims.

At bottom, Relator cannot remedy its pleadings through creative sleight of hand—either by manufacturing allegations that do not exist, or by omitting allegations that are inconvenient to its narrative.  *See* Dr. Callum MTD at 10.  Relator's mischaracterizations and omissions underline a fatal weakness in its case:  Relator has no first-hand knowledge regarding the events in question, forcing Relator to rely on guesswork and conjecture.  The Amended Complaint should be dismissed with prejudice as it relates to Dr. Callum for failure to satisfy the pleading requirements of Rules 12(b)(6) and 9(b).

## CONCLUSION

The Amended Complaint should be dismissed with prejudice for the reasons stated above.

Dated: March 15, 2024

Respectfully submitted,
**Quinn, Emanuel, Urquhart & Sullivan, LLP**

By: /s/ William Thompson
William Thompson (Texas SBN 24094981)
3100 McKinnon St, Suite 1125
Dallas, TX 75201
(469) 902-3600
willthompson@quinnemanuel.com

Anthony Bongiorno (admitted *pro hac vice*)
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
anthonybongiorno@quinnemanuel.com

William D. Weinreb (admitted *pro hac vice*)
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
billweinreb@quinnemanuel.com

*Attorneys for Michael Callum*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on March 15, 2024, I electronically filed the foregoing document using the Court's ECF system, which will send notice of the filing to all counsel of record via e-mail.

                                                    /s/ William Thompson
                                                    William Thompson