IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF FLORIDA *ex rel.* OMNI HEALTHCARE, INC., <br><br>                           Plaintiffs, <br><br> v. <br><br> STEWARD HEALTHCARE SYSTEM LLC; STEWARD HEALTH CARE HOLDINGS LLC; STEWARD HEALTH CARE INVESTORS, LLC; STEWARD PHYSICIAN CONTRACTING, INC.; STEWARD MELBOURNE, INC. d/b/a MELBOURNE REGIONAL MEDICAL CENTER; STEWARD ROCKLEDGE HOSPITAL, INC. d/b/a ROCKLEDGE REGIONAL MEDICAL CENTER; STEWARD SEBASTIAN RIVER MEDICAL CENTER, INC. d/b/a SEBASTIAN RIVER MEDICAL CENTER; RALPH DE LA TORRE; MICHAEL CALLUM; DANIEL KNELL; JOSH PUTTER; TIM CROWLEY; and JAMES RENNA, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  <br><br><br> Case No.: 3:21-cv-00870-S |

**RELATOR'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO REOPEN THE CASE AS TO DEFENDANTS RALPH DE LA TORRE, MICHAEL CALLUM, DANIEL KNELL, JOSH PUTTER, TIM CROWLEY, AND JAMES RENNA**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Comes now, Plaintiff-Relator Omni Healthcare, Inc. ("Relator") files this Reply Brief in support of its Motion to Reopen the Case ("Motion") as to non-debtor defendants Ralph De La Torre, Michael Callum, Daniel Knell, Josh Putter, Tim Crowley, and James Renna (the "Individual Defendants"). For the reasons set forth below, Relator respectfully requests that the Court reopen the case as to the Individual Defendants and allow discovery to proceed.

I.  **INTRODUCTION**

Relator's Motion to Reopen the matter seeks to advance the litigation with respect to the Individual Defendants only, such that prejudice does not befall Relator in the wake of Defendants Steward Health Care System LLC, Steward Health Care Holdings LLC, Steward Physician Contracting, Inc., Steward Melbourne Hospital, Inc., Steward Rockledge Hospital, Inc., and Steward Sebastian River Medical Center, Inc.s' (the "Steward Defendants" and/or "Debtors") unpredictable bankruptcy action. Defendants' Joint Opposition incorrectly claims that, because Relator acknowledged the potential joint and several liability in this action, the Individual Defendants cannot possibly put forth their own independent defenses without Debtors participation. ECF No. 111. However, the mere existence of joint and several liability is an insufficient basis upon which to extend the automatic bankruptcy stay under 11 USCS § 362(a) to non-debtor defendants. Defendants cannot even confirm the existence of indemnification obligations that would necessitate Debtor involvement in the defense of the Individual Defendants. That the parties might have similar defenses is no basis to halt the litigation.

Not only are certain Individual Defendants named as defendants in this action in their professional capacities, but they are also defendants in their individual capacities in relation to their fraudulent conduct. Indeed, the Individual Defendants, as alleged, directly benefitted from the underlying fraudulent conduct for years, padding their pockets with the ill-gotten gains while ensuring the financial demise of the entities they were responsible for protecting. While there is no statutory basis for extending the automatic stay, Defendants have failed to make a coherent case of hardship or inequity in the event the Individual Defendants, one of whom had no employment relationship with Debtors whatsoever, were to continue litigating the claims against them. Similarly, the uncertain duration of the automatic stay, in its current form, is prejudicial to Relator

in the face of an open-ended bankruptcy proceeding. For the foregoing reasons, and the reasons stated in Relator's Motion.

## II. DEFENDANTS FAIL TO SHOW THAT THE AUTOMATIC STAY SHOULD EXTEND TO THE NON-DEBTORS IN THIS CASE

The Debtor defendants, alongside Individual Defendants, argue that the automatic stay under 11 USCS § 362(a) should extend to Individual Defendants because a judgment against the Individual Defendants "will in effect be a judgment or findings against the debtor." *See* Defendants' Joint Opposition, ECF No. 111 at 1-2. However, "the automatic stay applies only to the debtor, not to nonbankrupt co-defendants." *Brigida v. Valk*, 2019 WL 13175535, at *2 (N.D. Tex. Dec. 18, 2019) (citing *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). This "[o]ne exception to this rule…is 'very rarely' applied." *Id.* (quoting *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 905 n.3 (5th Cir. 2011)). As Defendants are asking this Court to extend the automatic stay, they have the burden to show the exception to the general rule against automatic extension to non-debtors applies here. *See Beran v. World Telemetry, Inc.,* 747 F. Supp. 2d 719, 722 (S.D. Tex. 2010) (citing *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d at 825). For the foregoing reasons, Defendants have failed to satisfy their burden.

A. <u>A Judgment Against Individual Defendants is Not a *De Facto* Judgment Against Debtors</u>

Defendants argue that permitting the matter to proceed against the Individual Defendants would "deprive Debtors from participating in their own defense" and Debtors "could find themselves having to pay a judgment against one or more of the Individual Defendants." *See* Opposition at 2-3. This is mere conjecture, as there is no guarantee or proof that Steward Defendants would be required to indemnify the Individual Defendants in the event of an adverse ruling against them. *See Reliant Energy Servs., Inc. v. Enron Canada Corp.,* 349 F.3d 816, 825 (5th Cir. 2003) (refusing to rule on this issue until the defendant showed that its contract with the

plaintiff imposed an indemnification obligation and thus, created "an identity of interests between the debtor and nondebtor.") (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001)). The *Reliant Energy* Court made clear that in the absence of an actual, not merely *possible*, indemnity obligation between the debtor and non-debtor, the exception to the general rule against extension of the stay would not apply to the non-debtor.

"Under Fifth Circuit law, 'the presence of identical allegations against the debtor and nondebtor defendants are an insufficient ground to extend the stay to the non-debtors." *Blundell v. Home Quality Care Home Health Care, Inc.,* 2017 WL 5889715, at *3 (N.D. Tex. Nov. 29, 2017). This Court has held that it "'ha[s] not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision.'" *Id.* at *4 (citing *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003); *accord In re Divine Ripe, L.L.C.*, 538 B.R. 300, 306 (Bankr. S.D. Tex. 2015)). As the *Blundell* Court concluded, the mere chance of indemnification, which is the basis of Defendants' Opposition, is insufficient under Fifth Circuit law to justify extension of the automatic stay. Defendants, too, cite the *Blundell* decision in their Opposition, even confirming that the Court did not impose a stay based on the automatic stay rule, but rather in its discretion.[1] Importantly, and as argued in the Motion, joint and several liability is a not a basis to extend the automatic stay to non-debtors, but rather a basis to deny it.

As the Individual Defendants are named in this action separately from their corporation[2], there are two theories of liability brought forth by Relator in this case: (a) the Individual

---

[1] *See* Opposition at 5 ("*Blundell*, 2017 WL 5889715, at *6 (N.D. Tex, Nov. 29, 2017) (administratively closing the case at the court's discretion **even where** the non-debtor co-defendants could be held jointly and severally liable)") (emphasis added).

[2] At all times, the Individual Defendants have been represented by separate counsel, not Debtors' counsel, and have litigated the matter separately thus far.

Defendants' fraudulent conduct to arrange for illegal remuneration and false claims submitted to the government, as orchestrated by each individual and as part of the overall conspiracy, and (b) Debtors' corporate liability for submitting the false claims to the government under the scheme. Absent a showing, or even a claim, of a contractual agreement to indemnify the Individual Defendants for fraud specifically, the Individual Defendants cannot rely on an unproven obligation as the basis for the exception to the general rule against extending the automatic stay to non-debtors.

> i. *Defendants Michael Callum, Daniel Knell, Josh Putter, Tim Crowley, and James Renna*

The Callum, Knell, Putter, Crowley, and Renna defendants ("Executives Employees") have not shown that they are entitled to the exception to the general rule that the automatic stay does not apply to non-debtors. The Executive Employees are responsible for their individual fraudulent conduct. "A corporate officer who knowingly participates in fraudulent acts may be held individually liable to third person even though his acts were performed as an agent of the company." *Patek v. Alfaro (In re Primera Energy, LLC)*, 579 B.R. 75, 144 (Bankr. W.D. Tex. 2017). Relator does not simply seek Debtors' property, as implied by Defendants, but also Individual Defendants' property, in the form of damages, independently and individually for their own fraudulent conduct under the scheme.

Debtors insufficiently rely on the possibility that they "could" face a subsequent lawsuit from the Individual Defendants for indemnification or contribution but fail to show actual proof of this obligation under any such agreements between the parties. *See* Opposition at 3. Thus, there is no reason that they cannot be individually liable for fraud and therefore proceed with litigation and discovery. In fact, there is reason to believe that the Executive Defendants, whether some or all, acted in their own personal financial interest when committing the fraud alleged in this case.

Specifically, Defendant Ralph De La Torre ("De La Torre") has recently come under investigation by the Senate Health, Education, Labor and Pensions ("HELP") Committee "financial mismanagement and what occurred at Steward Health Care," as characterized by HELP Committee Chair Senator Bernard Sanders and in reference to the Debtors' bankruptcy filing. De La Torre failed to report to the September 12, 2024 HELP Committee hearing, while under subpoena. As a result, on September 19, 2024, the HELP Committee voted unanimously to recommend both civil and criminal contempt against De La Torre for failure to appear.[3] De La Torre then sent a letter to the HELP Committee *after* the fact alleging that his right to invoke silence under the Fifth Amendment prevented any such action. On September 25, 2024, the full United States Senate *unanimously* approved a resolution to hold De La Torre in criminal contempt for failing to testify before the committee.[4]

In a subsequent press conference, Senator Sanders expressed interest in De La Torre's personal compensation and spending, referring to De La Torre's "$100 million payday that he used to purchase a $40 million yacht." *Id.* Senator Sanders further stated that, "[w]hile Steward hospitals were laying off health care workers, Dr. De La Torre received some $16 million a year in compensation, enough to afford this $15 million custom-made luxury fishing boat." *Id.* There is no world in which the financial crises faced by the Debtors, leading them to bankruptcy, is in any way reflected by De La Torre's personal financial gains. Unless De La Torre has another occupation in tandem with his CEO role with the Steward Defendants, there is amply basis to

---

[3]   *See* https://www.sanders.senate.gov/press-releases/news-with-bipartisan-vote-sanders-leads-help-committee-investigation-into-bankruptcy-of-steward-health-care-and-subpoenas-its-ceo-3/
[4]   *See* https://abcnews.go.com/Health/wireStory/senate-approves-criminal-contempt-resolution-steward-health-care-114164963

proceeding with litigation against De La Torre in his individual capacity and for the fraudulent scheme alleged in this case.

### ii. *Defendant James Renna*

There is no statutory basis to extend the automatic stay to Defendant James Renna ("Renna"). Renna, as former lead financial executive at Cerberus Capital Management, L.P. ("Cerberus"), is not affiliated with Debtors in any way that would impose a ruling against one upon the other. Defendants' Opposition does not discuss Renna's involvement specifically nor does it offer no explanation as to how Cerberus' decisions control Debtors or the Executive Defendants, whether strategic or financial. Instead, Defendants group all Individual Defendants together and claim that they "were sued solely for actions they took in the scope of their employment by Debtors." *See* Opposition at 5. However, there is no mention of Renna's employment with Debtors or whether Renna's employer was under the control of Debtors.[5]

Furthermore, if the matter were to proceed with Renna and on to discovery, neither the Individual Defendants nor Debtors would be involved in this process. It also cannot be said that Renna and/or Cerberus share an identity with Debtors. While he may have acted in concert with the Executive Defendants, Renna's actions are not imputed to Debtors and his relationship with Debtors cannot be said to have formed an identity with them, as necessary to fall under the general rule's exception.

It is clear that all Individual Defendants can be held individually liable for their fraudulent conduct and the financial gains received from that conduct. *See Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 722 (S.D. Tex. 2010) (citing *Reliant Energy Servs., Inc. v. Enron Can. Corp.*,

---

[5] Cerberus Capital Management, L.P. was voluntarily dismissed from this matter. If Defendants allege that Debtors exercised control over Cerberus, this contradicts the company's prior representations concerning this issue to Relator which ultimately led to the dismissal.

349 F.3d at 825). Just as the Executive Defendants have failed to satisfy their burden of showing that the automatic stay should apply to them, Renna has also failed to satisfy his burden under this exception to the general rule.

### III. PERMITTING THE LITIGATION TO PROCEED AGAINST NON-DEBTORS SERVES THE INTERESTS OF JUSTICE

Though this Court has discretion in its stay of a proceeding provided certain circumstances are present, a discretionary stay is only justifiable where two conditions are met: "(1) there is a clear inequity to the party who is required to defend while another action remains unresolved and (2) the stay order can be framed to contain reasonable durational limits." *Brigida v. Valk*, 2019 WL 13175535, at *2 (N.D. Tex. Dec. 18, 2019) (citing *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir. 1983)). The party who is under the obligation to make a clear case of hardship or inequity is the party seeking the stay – the Defendants and not Relator. *Id.* [6]

Regarding the first requirement, the Individual Defendants are alleged to have committed fraud and are, thus, named individually in the pleadings. Defending their individual liability for fraudulent conduct does not impact Debtors, short of an obligation to indemnify Individual Defendants for fraud. The Opposition makes no such affirmative declaration, let alone provide documentary evidence, like an employment agreement, confirming it. As neither Debtors nor Individual Defendants claim that this type of indemnification affirmatively exists between them, this argument carries no weight here. Assuming there is no indemnification, the theories of defense

---

[6] The entirety of Subsection C in the Opposition is based upon a false elevated standard which Defendants attempt to impose upon Relator. Defendants allege that Relator must demonstrate "significant hardship" in order to sever the claims against Individual Defendants in this matter. *See* Opposition at 6-7. However, Relator has not filed a Motion to sever in this case. Rather, Relator argues that the interests of justice and to prevent prejudice against it, given that the bankruptcy proceedings provide an unpredictable timeline, call for a continuation of the litigation against non-debtor parties, as permitted by *Reliant Energy*.

for Debtors and the Executive Defendants do not diverge so significantly so as to rob Debtors of their defenses, which are, effectively, well-represented in the Individual Defendants' arguments. There is also no such "clear inequity" in the defenses with regard to the bankruptcy proceedings, as there is no explanation as to *how* the actual bankruptcy proceedings would be undermined if this litigation were to proceed against the individuals involved.

Additionally, discovery concerning the Individual Defendants would not necessarily require Debtors' involvement, particularly where personal communications and documentation are concerned. This is especially true for the unrelated individual defendant, Renna. There is no prejudice to the Individual Defendants in moving forward in litigation, especially given their individual representations and varying degree of personal involvement in the fraudulent scheme. Further, a jury's determination that the Individual Defendants engaged in fraudulent conduct would not impact Debtors *unless* debtors are alleging that they must indemnify the Individual Defendants for their fraudulent conduct. Defendants cannot have this both ways and are attempting to paint this litigation as one broad claim against all parties. Relator has made clear that where joint and several liability also exists, and indemnification remains hypothetical, there is no basis for a stay in this action.

Assuming, *arguendo*, that the first requirement was satisfied, the second requirement must be met before a discretionary stay is issued under these circumstances. Here, there is a "fair possibility that a stay with no fixed timeframe would prejudice [Relator]" in the event that the automatic stay remains in place. *See* B*rigida v. Valk,* 2019 WL 13175535, at *3 (N.D. Tex. Dec. 18, 2019). A delay in these proceedings prejudices Relator's ability to proceed with the claims, especially where the stay is indefinite. The delay in the litigation serves only to benefit the Individual Defendants who are not related to the bankruptcy action.

The Court's Order indicates that the automatic stay in this case is in effect "until the bankruptcy proceeding is concluded or the stay is lifted." ECF No. 106. The terms of this automatic stay are not reasonably limited on their duration, as bankruptcy proceedings have the potential to last several years until the final terms are concluded to the fullest extent. Further, as shown by certain defendants' behavior, specifically Defendant De La Torre, there is ample incentive to delay and attempt to circumvent these proceedings for their own personal benefit, excluding any benefit to the Debtors. The HELP Committee is actively investigating Debtors' bankruptcy based on glaring financial discrepancies evident through comparisons of the executive compensation versus the financial health of the hospitals they have been running. This means that even if the bankruptcy action could be resolved in the next year, it may be stalled by the congressional investigation. Accordingly, given the Senate's approval of the criminal contempt against De La Torre, tethering the non-debtors to the bankruptcy action would unduly and undoubtedly prejudice Relator.

The bankruptcy proceeding, though underway, could take several years to conclude. In the meantime, the Individual Defendants, who would not be individually liable in the bankruptcy action, would be rewarded with an unwarranted break in litigation and discovery in this case. If this Court were inclined to impose a discretionary stay of the case, Relator respectfully requests that the stay be limited in duration, with a definitive term, so as to prevent prejudice to Relator.

## IV.   CONCLUSION

For the foregoing reasons and the reasons stated in Relator's Motion, Relator respectfully requests the Court enter an order reopening this action as to the Individual Defendants.

Dated: September 27, 2024

Respectfully submitted,

**SPIRO HARRISON & NELSON**

<u>/s/ David B. Harrison</u>

David B. Harrison (*pro hac vice*)
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
(973) 744-2100
dharrison@shnlegal.com
*Lead Counsel for Relator*

David W. Henderson
Texas State Bar No. 24032292
ELLWANGER HENDERSON LLP
400 S Zang Blvd, Suite 600
Dallas, Texas 75208
(214) 948-3334
dhenderson@equalrights.law
*Local Counsel for Relator*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 27th day of September 2024, a true and correct copy of the foregoing Reply was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

<u>/s/ David B. Harrison</u>

David B. Harrison